**No. 24-3444**

———————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

———————

RHONDA BURNETT, et al.,
*Plaintiffs-Appellees,*

v.

THE NATIONAL ASSOCIATION OF REALTORS, et al.,
*Defendants-Appellees,*

KELLER WILLIAMS REALTY, INC.; REALOGY HOLDINGS CORP.
*Defendants,*

BHH AFFILIATES, LLC; HSF AFFILIATES, LLC
*Defendants – Appellees,*

RE/MAX LLC
*Defendant,*

v.

BROWN HARRIS STEVENS; THE AGENCY
*Intervenors – Appellees,*

v.

SPRING WAY CENTER, LLC; et al.
*Objectors - Appellants*

———————————————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
Case No. 19-cv-00332 (SRB), Hon. Stephen R. Bough
———————————————————————————

**OBJECTORS-APPELLANTS SPRING WAY CENTER, LLC, NANCY
WEHRHEIM, JOHN MORATIS, NANCY MORATIS, DANIELLE KAY, JESSIE
KAY, KAITLYN SLAVIC, AND MARIA IANNOME'S OPENING BRIEF**

i

Bruce C. Fox
bruce.fox@obermayer.com
Andrew J. Horowitz
andrew.horowitz@obermayer.com
D. McArdle Booker
Mcardle.booker@obermayer.com
Obermayer Rebmann Maxwell &
Hippel LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
Tel:            (412) 566-1500

Bert S. Braud, Esquire
MO ID No.: 34325
bbraud@pophamlaw.com
THE POPHAM LAW FIRM
712 Broadway, Suite 100
Kansas City, MO 64105
(816) 221-2288

*Attorneys for Objector-Appellants*
*Spring Way Center, LLC*
*Nancy Wehrheim*
*John Moratis*
*Nancy Moratis*
*Danielle Kay*
*Jessie Kay*
*Kaitlyn Slavic*
*Maria Iannome*

ii

# SUMMARY OF THE CASE

This lawsuit was among the first of a number of actions by local classes of homesellers to challenge a series of practices of the defendants here, as well as many other entities, to reduce competition in real estate brokerage and force homesellers to make large payments to buyer brokers, with the effect of increasing the price of residential real estate and extracting the additional amounts paid and putting it into the pockets of real estate brokers.

The action went to trial, and a jury awarded a Missouri-only class $1,785,310,874.00, subject to trebling. Despite this, the parties purported to enter into a settlement which would release claims by not only the original class but hundreds of thousands of other homesellers across the country, a class that would now include homesellers nationwide. How the settlement amount would be distributed is still somewhat unclear, but it is clearly a small fraction of the amount a jury awarded to just Missouri homesellers.

The trial court, in its hurry to approve this settlement, demanded that all objectors appear in person two days before a major holiday and gave their objections only cursory consideration, then approved the settlement, leading to this appeal. The Court of Appeals should reverse and remand for further proceedings.

The importance of the issues here justifies oral argument for 15 minutes.

iii

## CORPORATE DISCLOSURE STATEMENT

Spring Way Center LLC is a single member LLC, not a corporation, and therefore not subject to Fed.R.App.P. 26.1(a) and/or 8th Cir.R. 26.1A. At the request of the Clerk of Court, however, Spring Way Center LLC discloses that it has no parent corporation and, while as an LLC it has no stock, no corporation possesses greater than 10% ownership of Spring Way Center LLC. All other Appellants are natural persons.

*/s/ D. McArdle Booker*
Attorney for Objector-Appellants

# TABLE OF CONTENTS

SUMMARY OF THE CASE ....................................................................... iii

CORPORATE DISCLOSURE STATEMENT ........................................... iv

TABLE OF CONTENTS ........................................................................... v

TABLE OF AUTHORITIES ...................................................................... vii

STATEMENT OF JURISDICTION .......................................................... 1

I.      The Basis for the District Court's Jurisdiction ................................... 1

II.     The Basis for this Court's Jurisdiction ................................................ 1

III.    The Filing Dates Establishing the Timeliness of the Appeal ............... 1

IV.    This Appeal Is from a Final Order Upon Which Judgment Has Been
        Entered .............................................................................................. 1

STATEMENT OF THE ISSUES ................................................................ 2

STATEMENT OF RELATED CASES ...................................................... 5

STATEMENT OF THE CASE ................................................................... 6

SUMMARY OF ARGUMENT ................................................................. 16

ARGUMENT ......................................................................................... 16

I.      Standard of Review ............................................................................ 17

II.     The rushed approval of the settlements and brush-off treatment of the
        objectors does not satisfy F.R.Civ.P. 23(e) ....................................... 17

Appellate Case: 24-3444    Page: 5    Date Filed: 04/28/2025 Entry ID: 5510838

CONCLUSION ..................................................................................26

Appellate Case: 24-3444    Page: 6    Date Filed: 04/28/2025 Entry ID: 5510838

# TABLE OF AUTHORITIES

## Cases

*Berardinelli v. General Am. Life Ins. Co.* 357 F.3d 800, 805 (8th Cir., 2004) ...2, 3, 4

*Bezdek v. Vibram USA, Inc.*, 809 F.3d 78 (1st Cir. 2015).................................3, 4, 27

*Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 542 (1985)..................3, 5, 25

*Eubank v. Pella Corp.*, 2019 U.S. Dist. LEXIS 43074 (N.D.Ill. Mar. 15, 2019) ....22

*Huyer v. Njema*, 847 F.3d 934, 938 (8th Cir. 2017)....................................................18

*In re Gen. Am. Life Ins. Co. Sales Pracs. Ligtig.* ....................................................20

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) ........2, 3, 4, 22, 23, 24

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005)................................................................................................................5, 26

*Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283 (3d Cir. 1998)...........................21

*McMorrow v. Mondelez Int'l.*, 2022 U.S. Dist. LEXIS 66016 (S.D.Cal., April 8, 2022)...........................................................................................................21, 22

*Pitman Farms v. ARKK Food Co., LLC*, 78 F.4[th] 1006, 1008 (8th Cir. 2023) .....5, 25

*Rikos v. Proctor & Gamble Co.*, 2018 U.S. Dist. LEXIS 72722 (S.D.Ohio April 30, 2018)...........................................................................................................22, 23

*Smith v. Atkins Nutritionals, Inc.*................................................................................20

*Spring Way Center, et al. v. West Penn Multi-List, Inc*, No. 23-cv-02061 (W.D.Pa.) ........................................................................................................................6, 12

## Statutes

1294(1)...................................................................................................................1

1332(d)(2).............................................................................................................1

1337 .......................................................................................................................1

15 U.S.C. § 15(a)..................................................................................................7

15 U.S.C. § 4 .........................................................................................................1

28 U.S.C. § 1291 ...................................................................................................1

28 U.S.C. §§ 1331 ................................................................................................1

## Rules

F.R.Civ.P. 23(e)....................................................................................................2

F.R.Civ.P. 23(e)(2)(C)(ii)...................................................................................22

Federal Rule of Civil Procedure 23(e) .....................................................16, 17, 26

Federal Rule of Civil Procedure 23(e)(2).........................................................17, 23

Appellate Case: 24-3444    Page: 7    Date Filed: 04/28/2025 Entry ID: 5510838

*Rule 23(c)* ................................................................................ 21
Rule 23(e)(2)(C) ........................................................................ 22
Rule 23(e)(3) ............................................................................. 18

viii

# STATEMENT OF JURISDICTION

## I.      The Basis for the District Court's Jurisdiction

The Plaintiffs in this action stated subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332(d)(2), 1337, and 15 U.S.C. § 4. App. 54-55; R. Doc. 759, ¶ 30.

## II.      The Basis for this Court's Jurisdiction

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 1294(1).

## III.      The Filing Dates Establishing the Timeliness of the Appeal

The trial court finally approved the settlement challenged in this appeal on November 26, 2024, the same day as the hearing on approval. App. 3361, 3367; R. Doc. 1618, 1622. Spring Way Center LLC filed its Notice of Appeal on November 27, 2024. App. 3461; R. Doc. 1624.

## IV.      This Appeal Is from a Final Order Upon Which Judgment Has Been Entered

This appeal is taken from a final approval of a class action settlement, and of an order on motion for reconsideration. App. 3367, 3455; R. Doc. 1622, 1623. Final judgment was entered on January 15, 2025. App. 3530, 3534; R. Doc. 1673, 1674.

1

## STATEMENT OF THE ISSUES

1. Did the trial court err in certifying a class for settlement when:

    a. The settlement class was significantly different from and enormously broader than the class pleaded in the Complaint;

    b. The settlement class was significantly different from and enormously broader than the class previously certified; and/or

    c. The settlement class was significantly different from and enormously broader than the class for which discovery was conducted?

F.R.Civ.P. 23(e)

*Berardinelli v. General Am. Life Ins. Co.* 357 F.3d 800, 805 (8th Cir., 2004)

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005)

2. Did the trial court err in approving a settlement when the weight of the evidence, including a prior judgment of the same court, showed that the settlement amount was grossly disproportionate to the harm caused by the settling defendants, by orders of magnitude, and did not account in any way for statutory trebling of damages?

F.R.Civ.P. 23(e)

*Berardinelli v. General Am. Life Ins. Co.* 357 F.3d 800, 805 (8th Cir., 2004)

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005)

3. Did the trial court err in imposing an additional requirement that objectors appear in person at the settlement hearing which was not contained in the

2

notice to the purported class, had no legal justification, and demanded not just counsel but the objectors themselves travel to the Western District of Missouri for a hearing at which no evidence was taken two days before a major holiday, on pain of waiver of their objections?

*Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 542 (1985)

*Bezdek v. Vibram USA, Inc.*, 809 F.3d 78 (1st Cir. 2015)

4. Did the trial court err in deeming the objections of all objectors who were not able to travel to the Western District of Missouri with minimal notice two days before a major holiday waived?

*Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 542 (1985)

*Bezdek v. Vibram USA, Inc.*, 809 F.3d 78 (1st Cir. 2015)

5. Did the trial court err in approving a settlement which did not serve the interests of the settlement class in that, *inter alia*, it:

   a. Did not take into account the differing factual bases of the claims of the original certified class and those of the members of the expanded, nationwide settlement class; and/or

   b. Accepted grossly insufficient evidence supporting key elements of settlement approval, including but not limited to ability to pay of the settling defendants?

*Relevant Authority*

F.R.Civ.P. 23(e)

3

*Berardinelli v. General Am. Life Ins. Co.* 357 F.3d 800, 805 (8th Cir., 2004)

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005)

6. Did the trial court err by failing to hold a sufficient evidentiary hearing on the approval of the settlement?

*Relevant Authority*

F.R.Civ.P. 23(e)

*Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 542 (1985)

*Pitman Farms v. ARKK Food Co., LLC*, 78 F.4th 1006, 1008 (8th Cir. 2023)

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005)

## STATEMENT OF RELATED CASES

A prior appeal of a related settlement was filed by Spring Way Center, LLC at docket number 24-2168. Related appeals have been filed in this matter in this Court by several of the many other objectors to related settlement at docket numbers 24-2143, 24-2168, and 24-2391 and to this settlement at docket numbers 24-3450, 24-3451, 24-3473, 24-3527, 24-3564, 24-3585, 24-3589, 24-3619, and 24-3621.

Multiple other actions are also proceeding across the country to redeem the rights of homesellers who were not represented throughout the litigation in this matter until the proposed settlements were put forward, proposing to extinguish their rights under federal law without any discovery being taken or any opportunity to present their claims on the merits. This includes, most relevant to this appeal, *Spring Way Center, et al. v. West Penn Multi-List, Inc*, No. 23-cv-02061 (W.D.Pa.).

5

# STATEMENT OF THE CASE

This action was initiated in the Western District of Missouri on April 29, 2019. The relief requested in the current operative complaint (the "Third Amended Complaint") includes counts for violation of Section 1 of the Sherman Antitrust Act; violation of the Missouri Merchandising Practices Act; and violation of the Missouri Antitrust Law. App. 0042; R. Doc. 759 ¶¶ 135-162.

The trial court certified a separate class for each of these counts.[1] App. 0001; R. Doc. 741, p. 40. The most important of these three classes was referred to as the "Subject MLS Class," and was the only class stating a federal claim that might be stated in actions in other states. That class, as approved, encompassed:

> All persons who, from April 29, 2015 though the present, used a listing broker affiliated with Home Services of America, Inc., Keller Williams Realty, Inc., Realogy Holdings Corp., RE/MAX, LLC, HSF Affiliates, LLC or BHH Affiliates, LLC, in the sale of a home listed on the Heartland MLS, Columbia Board of Realtors, Mid America Regional Information System, or the Southern Missouri Regional MLS, and who paid a commission to the buyer's broker in connection with the sale of a home.

App. 0001; R. Doc. 741, p. 40. That is, it included six realty companies and four listing services, all acting within the State of Missouri and subject to suit for actions in Missouri.

---

[1] The class certification on April 22, 2022 was actually prior to the filing of the Third Amended Complaint on May 6, 2022, but the certified classes and counts stated were unaffected by the minor changes between the Second and Third Amended Complaints.

6

Ultimately a trial was held, and a jury found that all defendants had engaged in a conspiracy that "had the purpose or effect of raising, inflating, or stabilizing broker commission rates paid by sellers." App. 0140; R. Doc. 1294. The defendants found liable were the National Association of Realtors ("NAR"), Home Services of America, Inc. ("HSA"), BHH Affiliates, LLC ("BHH"), HSF Affiliates, LLC ("HSF"), Keller Williams Realty, Inc. ("Keller Williams"), Anywhere Real Estate, Inc. ("Anywhere"), and RE/MAX LLC ("RE/MAX").[2] App. 0140; R. Doc. 1294. The jury awarded the class $1,785,310,872.00. App. 497; R. Doc. 1294. This award was subject to trebling pursuant to the Sherman Antitrust Act, to $5,355,932,616.00, as well as the addition of attorney fees and interest. 15 U.S.C. § 15(a).

> a. *Class counsel, NAR, and other defendants enter into a settlement for a fraction of the amount the jury awarded*

Following the entry of judgment, class counsel filed a Motion for Preliminary Approval of a settlement with NAR on April 19, 2024. App. 0199; R. Doc. 1458. The trial court granted preliminary approval on April 23, 2024. App. 0383; R. Doc. 1460. Class counsel filed a Motion for Preliminary Approval of a settlement with HSA, BHH, HSF, and the Long & Foster Companies, Inc

---

[2] Anywhere, RE/MAX, and Keller Williams are not parties to the settlement challenged here, but entered into a separate settlement which is the subject of Spring Way Center LLC's appeal docketed at number 24-2168, among other appeals currently pending before this Court.

7

(collectively, "HomeServices") on August 7, 2024. App. 0477; R. Doc. 1518. The trial court preliminarily approved the HomeServices settlement on August 8, 2024. App. 0603; R. Doc. 1520.

Class counsel also filed an Unopposed Motion to Approve Form of Notices on August 7, 2024. App. 0563; R. Doc. 1519. This Motion included two exhibits, the "long form notice" and the "email notice" of the proposed NAR and HomeServices settlements. App. 0563; R. Doc. 1519. Under the heading "The Court's Fairness Hearing," the long form notice, designed to be posted online, stated, *inter alia*:

> 19. Do I have to come to the hearing?
> No. Class Counsel will represent the Settlement Class at the Fairness Hearing, but you are welcome to come at your own expense. *If you send any objection, you do not have to come to Court to talk about it. As long as you filed your written objection on time, the Court will consider it.* You may also pay your own lawyer to attend if you wish.

App. 0567; R. Doc. 1519-1, at p. 14 (emphasis added). The short form notice, designed to be sent to class members by email, contained the same language. App. 0558; R. Doc. 1518-2. The trial court granted the motion on August 9, 2024, approving the form notices promising that objections would be considered regardless of the appearance or non-appearance at the fairness hearing of the objector. App. 0611; R. Doc. 1521.

8

Class Counsel filed a motion for final approval of both the NAR settlement and the HomeServices settlement on November 20, 2024. App. 2897; R. Doc. 1595. This motion included the final terms of the settlement, including stating amounts that would be paid by NAR, HomeServices, and additional entities which had been permitted to "opt in" to the NAR settlement. App. 2897; R. Doc. 1595. It also included, to bump up its numbers, amounts to be paid by Anywhere, Keller Williams, and RE/MAX under separate settlements had already been finally approved and appealed months before. App. 0391, 0437; R. Doc. 1487, 1506.

According to the motion for final approval, NAR would pay $418 million, HomeServices would pay $250 million, and entities that opted in to the settlement would pay $30,587,754. App. 2897; R. Doc. 1595. This amounts to $698,587,754. This amount was designed to be "inclusive of all costs of settlement, including payments to Class members, attorneys' fees and costs, service awards for the Settlement Class Representatives, and costs of notice and administration." App. 2897; R. Doc. 1595. Under the separate settlement, Anywhere would pay $83.5 million; RE/MAX would pay $55 million; and Keller Williams would pay $70 million, for a total among the three of $208.5 million. App. 0097, 0143; R. Doc. 1192, 1371. As a result, even including the amounts from the separate settlement, the settlement fund amounted to $904,087,754, a bit less than seventeen percent of the amount due to the Missouri-only class pursuant to the jury verdict.

9

> ### b. The settlements release the claims of a vast group of victims nationwide who never had a day in court, including as to additional parties not party to the original suit

This settlement, however, was not to be with the Missouri class that was entitled to not $904 million, but over $5 billion. Neither was it to be with only the defendants in that action It was to be much broader than that and extinguish the claims of far more homesellers who had been harmed by the defendants, because it intended to replace the Missouri class with a new, nationwide class:

> The proposed Settlement Class in the NAR Settlement Agreement includes all persons who sold a home that was listed on a multiple listing service anywhere in the United States where a commission was paid to any brokerage in connection with the sale of the home in the following date ranges: [a set of date ranges tied to the Sherman Act's statute of limitations].

App. 2897; R. Doc. 1595, at p. 6. Thus, rather than more than five billion dollars in recovery for homesellers harmed on four listing services, this settlement would instead deliver a little over two hundred million to all homesellers harmed on over six hundred listing services nationwide – less, of course, attorneys' fees and other costs. The attorney fees requested by and approved by the trial court amounted to one third of the total settlement fund. App. 0624, 2897; R. Doc. 1535, 1595. This means that the real amount to be distributed to class members was in fact $602,725,169.33, less administrative fees and service awards.

10

The trial court later noted that already 491,000 claims – and counting – had been made, before it even approved the NAR and HomeServices settlements and with months to go before the opt-in deadline. App. 3434; R. Doc. 1622 ¶ 3. That means that, already at that time, the fund was down to about twelve hundred dollars per claimant,[3] with administration costs and service awards still to be removed, and the total to be further split with additional claimants who had not yet opted in. This is for people who were harmed to the tune of three percent of the value of their homes by an antitrust conspiracy.

Some of these homesellers are already included in class actions specific to their own geographic locations, as appropriate to issues dealing with residential real estate – like the *Spring Way Center, et al. v. West Penn Multi-List, Inc* action in the Western District of Pennsylvania. No. 23-cv-02061. While it has not been made clear how the funds in this settlement pool are to be distributed, given the diminution of the funds available and the broadening of the scope of the settlement class, it would be impossible for those homesellers to receive anything that would even resemble being made whole, much less the treble damages provided by the Sherman Act.

---

[3] This is the average per claimant, not the amount any particular claimant would receive. How the fund will be distributed is still in question.

11

c. *The trial court goes back on its promise that objections would be considered regardless of attendance at the settlement hearing*

The trial court set a hearing for the final approval of the settlements at issue in this appeal for November 26, 2024. App. 0383, 0827, R. Doc. 1460, 1540. Many parties filed objections to the approval of the settlements. App. 0147, 0149, 0153, 0155, 0431, 0194, 0197, 0440, 0474, 0617, 0619, 0821, 0824, 0833, 0835, 0885, 0935, 1072, 1098, 1741, 1767, 1891, 2072, 2753, 2795, 3364, 3381, 3413, 3421, 3426;  R. Doc. 1404, 1405, 1439, 1445, 1488, 1453, 1454, , 1510, 1517, 1528, 1532, 1537, 1539, 1541, 1547, 1548, 1552, 1555, 1558, 1559, 1560, 1561, 1562, 1563, 1564, 1600, 1605, 1606, 1609, 1616.

Despite approving notices to the class that clearly stated that objections would be considered whether objectors appeared or not, the trial court, without warning or explanation, issued a text only order on November 4, 2024 ordering "all objectors and their attorneys to appear in person at the November 26, 2024 hearing at 1:30 PM to argue their objections. Failure to comply with a Court's order can result in an objection being struck or waived." App. 2815;  R. Doc. 1566. Thus, with about three weeks' notice, if they saw it, before a hearing that would occur two days before Thanksgiving, not only the attorneys for objectors *but the objectors themselves* would have to make their way to Missouri from all over the country (as this had become a purported nationwide settlement). If they did not appear, the trial court threatened that their objections would be waived.

12

Objector Robert Friedman requested that the trial court allow him to appear by telephone or videoconference, including a declaration of the reasons why he, a public school teacher, could not drop everything to rush off to Kansas City. App. 2823, 2826; R. Doc. 1585, 1585-1. In another text only order, the trial court denied Mr. Friedman's request without explanation, stating only, "Parties shall abide by the Court's Order (Doc # 1566) ordering all objectors and their attorneys to appear in person at the November 26, 2024 hearing to argue their objections." App. 2829; R. Doc. 1590.

Multiple parties filed motions for reconsideration of this onerous, unexplained, and puzzling demand by the trial court. App. 2821; 2823, 2888 R. Doc. 1574, 1575, 1578. The trial court denied those motions in yet another unexplained text only order, and only after the hearing had already occurred and the trial court had already deemed their objections waived. App. 3434, 3522; R. Doc. 1622, 1623. That text only order directed litigants to the transcript of the November 26 hearing for further explanation. App. 3522; R. Doc.1623.

Interested parties looking to that transcript, however, would find a dry hole. App. 3532; R. Doc. 1640. When counsel attempted to address this issue, the trial court brushed it off and quickly moved on. App. 3532; R. Doc.1640 36:13-37:5. At no point did the trial court offer any explanation of the reasons for the in-person order.

13

Neither did it offer any such explanation in its Order, issued the following day, approving the settlements. App. 3434; R. Doc. 1622. It simply stated, "This order is within the Court's discretion, particularly in light of the recent events in these cases that necessitated such appearances," citing two out-of-circuit district court opinions and one state court opinion. App. 3434; R. Doc. 1622. The trial court did not address the *volte face* nature of its approval of the notice to the class promising that all objections would be considered whether objectors attended in person or not, and then the order shortly before the hearing suddenly demanding the opposite. Nor did it explain what "recent events" induced it to strip objectors of their statutory right to object to class action settlements. It did find all objections of any party that was unable to attend in person, including every individual Appellant here, to be waived. App. 3434; R. Doc. 1622.

d. *The trial court approves the settlement over the objections of a variety of interested parties which the settlement will harm*

The proponents of the settlement relied on claims about the limitations of the ability to pay of the settling defendants, they refused to produce any support for those claims except a declarations of two class counsel. App. 2897, 3034, 3047; R. Doc. 1595, 1595-1, 1595-2. Neither gave testimony at the settlement approval hearing and no testimony by anyone who was not counsel to in this case was offered to support the idea that the financial condition of the settling parties (including 28 opt-in releasees whose financial condition is not even addressed).

14

At the November 26, 2024 hearing, of the thirty-six objectors, the court allowed seven to present argument to but allowed each only a few minutes and did not allow any to present evidence in support of their objections. App. 3434, 3532; R. Doc. 1622, 1640. The hearing, which was really only an oral argument, lasted slightly less than two hours, for a settlement forcing a significant discount on thousands of homesellers nationwide. App. 3428; R. Doc. 1618. The day after the hearing, the trial court issued an eighty-eight page rejecting all objections and approving the settlement. App. 3434; R. Doc. 1622. This appeal – along with others –followed. On January 15, 2025, the trial court also certified the settlement approval as final judgments. App. 3597, 3601; R. Doc. 1673, 1674.

## SUMMARY OF ARGUMENT

Federal Rule of Civil Procedure 23(e) contains a set of clear requirements for the approval of the settlement of a class action. While there are specific requirements, the fundamental touchstones of all of those requirements is to ensure that the settlement is fair and reasonable. Here, however, the trial court approved a settlement that is facially and inescapably unreasonable, providing a nationwide class with a sum dwarfed by what a jury has already determined is an appropriate award for a single state class: and even depriving the members of that single state class the relief they were awarded by that jury. The settlement is insufficient by the clear terms of Rule 23(e), because it does not address a key requirement. In rushing to approve this settlement, the trial court failed to provide a hearing appropriate to the issues involved. Indeed, it imposed an unexplained, onerous, and unnecessary requirement that all objectors, wherever they might reside and whatever their circumstances, to appear in Kansas City two days before Thanksgiving or find their objections deemed waived. For all of these reasons, this Court should reverse the determination below.

## ARGUMENT

In this matter, class counsel, the defendants, and the trial court rushed through approval of a half-baked settlement plan in an antitrust class action which served the purposes of the individuals in the room where it happened. To some degree, they cannot be blamed. Missouri class counsel was coming to the end of a

16

hard-fought litigation on behalf of their Missouri class and had expended significant time and resources. The Defendants faced immense and daunting consequences for their antitrust violations. The trial court had shepherded this complex matter for five years and was surely ready to see it resolved.

All of the incentives to approve settlement were in line. All, that is, except for those of a huge, but unknown, number of homesellers across the country who were victims of the antitrust conspiracy but, under this settlement, would see miniscule recovery and a denial of any chance for the specific facts of their harms ever being presented to a court of law.

## I.      Standard of Review

"A district court may approve a class action settlement only after finding that it is fair, reasonable and adequate. We review a district court's order approving a class action settlement for abuse of discretion." *Huyer v. Njema*, 847 F.3d 934, 938 (8th Cir. 2017).

## II.      The rushed approval of the settlements and brush-off treatment of the objectors does not satisfy F.R.Civ.P. 23(e)

a. *Rule of Civil Procedure 23(e)(2) sets out the requirements for approval of settlements*

The approval (or disapproval) of class action settlements is governed by Federal Rule of Civil Procedure 23(e)(2), which reads:

***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether:

> **(A)** the class representatives and class counsel have adequately represented the class;
>
> **(B)** the proposal was negotiated at arm's length;
>
> **(C)** the relief provided in the case is adequate, taking into account:
>
>> (i) the costs, risks, and delays of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3);[4] and
>
> **(D)** the proposal treats class members equitably relative to each other.

b. *The extraordinary expansion of the settlement class is inappropriate*

The trial court, in justifying the expansion of the class from the trial class, encompassing four listing services, to a nationwide class encompassing some six hundred, relies primarily on *In re Gen. Am. Life Ins. Co. Sales Pracs. Ligtig.* for the proposition that "[t]here is no impropriety in including in a settlement a

---

[4] Rule 23(e)(3) provides that "The parties seeking approval must file a statement identifying any agreement made in connection with the proposal." The 2003 Advisory Committee notes on Rule 23 indicates that this section is not about the terms of the settlement itself, which must also be disclosed, but "aims instead at related undertakings that, although seemingly separate, may have influenced the settlement by trading away possible advantages for the class in return for advantages for others. In short, 23(e)(3) concerns side deals. None were disclosed here.

18

description of claims that is somewhat broader than those that have been specifically pleaded." 357 F.3d 800, 805 (8th Cir., 2004). *General American*, however, is inapposite. Instead of a vast expansion of the class, *General American* addressed the inclusion of additional practices by the defendant. It also made clear that it is properly applied to claims "*somewhat*" broader than the original claims – while "somewhat" is not defined, the *General American* Court is not referring to an expansion in which the persons subject to the expansion outnumber the persons in the original class by a factor of over a hundred to one.[5] The court does cite a number of cases in which the class was expanded for settlement, but every one is a district court case – it identifies no circuit court that has approved such an expansion.

The Order approving the settlement does cite a case that cites to a Third Circuit case, but that case is inapposite here. *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283 (3d Cir. 1998). In that case, there was a dispute about whether the settlement in fact expanded the class at all. *Id*. at 235-236. In any case, the *Krell* Court found that the claims were based in the same deceptive practices alleged in the complaint and included no geographical expansion or expansion to people not subject to the original practices complained of. In the present case, on the contrary,

---

[5] The trial court's other citation on this point is to *Smith v. Atkins Nutritionals, Inc.*, a Western District of Missouri referred to only by its docket number (2:18-cv-04004-MDH) with no direction to any particular filing. This appears to be an action which settled prior to trial and without any objections. *Id*. at Dkt. # 53.

19

the original claims, and the class which went to trial, related only to antitrust harms committed in the state of Missouri. This is simply not the same kind of expansion as the Third Circuit faced in *Krell*.

The proponents of the settlements, meanwhile, rely on a series of, mostly unreported, district court cases which allowed the expansion of settlement classes to a nationwide class. *McMorrow v. Mondelez Int'l.*, 2022 U.S. Dist. LEXIS 66016 (S.D.Cal., April 8, 2022); *Eubank v. Pella Corp.*, 2019 U.S. Dist. LEXIS 43074 (N.D.Ill. Mar. 15, 2019); *Rikos v. Proctor & Gamble Co.*, 2018 U.S. Dist. LEXIS 72722 (S.D.Ohio April 30, 2018); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005). These cases, too, are each individually inapposite: in none was a vast expansion of the subject class paired with a reduction by orders of magnitude of the amount to be paid to the victims.

In *McMorrow*, for example, the case related to "low-cost consumer goods," and the amount recovered was "substantial in comparison to other low-cost consumer goods false advertising cases." 2022 U.S. Dist. LEXIS 66016 at *10. Approval did not follow a trial in which the defendants were found liable at an immensely higher amount. In *Eubank*, the fund provided for replacement value for Pella windows ranging from 25% of replacement cost to 100%, based on the time of purchase, and the defendant also covered attorney fees, costs, and expenses. 2019 U.S. Dist. LEXIS 43074 at *7. This is a far cry from a fund for a nationwide

20

class that represents a tiny fraction of the harm to a single-state class and must be split with class counsel and dipped into for costs and expenses. In *Rikos*, Proctor & Gamble refunded victims to the tune of 50% of the retail price of the product at issue, and separately paid fees, costs, and expenses. 2018 U.S. Dist. LEXIS 72722 at *6. Again, this is nothing like the matter before this Court now.

The Court in *In re Relafen* notes, "settlement of a large nationwide class action does not afford the same procedural safeguards to absent members of a class that full litigation of the same action would. Among other things, the opportunity and potential incentive for collusion between class counsel and the defendants is greater in the case of a negotiated settlement. For this reason, a court must carefully scrutinize the process by which the entire action was litigated and the settlement negotiated." 231 F.R.D. at 74.

This observation has fascinating application to this matter, where both full litigation and settlement negotiation occurred, and the negotiation, at least in part, came *after* the full litigation. A jury awarded what would amount to over five billion in damages to a single-state class. Then the lawyers went into a room together and when they came out a nationwide class a hundred times larger had a fraction of that. The *Relafen* Court's concerns were prescient.

    c. *The trial court failed to properly consider the Rule 23(c) factors, because it was impossible to do so*

While the relief offered to the nationwide class is, on its face, monstrously inadequate by comparison to the jury verdict, the court also did not address a specific point Rule 23(e)(2)(C) required it to consider, because the settlements as proposed did not address it, and so the trial court could not.

A court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." F.R.Civ.P. 23(e)(2)(C)(ii). The Motion for Final Approval of the settlements, which set out the terms of the settlements, is, however, silent on the question of who relief will be distributed or how claims will be processed. App. 3897; R. Doc. 1595. The trial court here not only did not consider this factor, it could not have done so. When the trial court comes close to addressing this issue, it glosses over the lack of a method for distributing relief or processing claims by instead touting the experience of the claims administrator. App. 3434; R. Doc. 1622 ¶ 25. No matter how experienced or capable the claims administrator, however, that does not substitute for that processor being provided with the means it must use for distribution.

As a result, the trial court ultimately approved a settlement that does not explain how relief will be distributed to the claimants, apart from approving service awards to class representatives.

> d. *The trial court did not provide a meaningful hearing for the objectors*

"An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 542 (1985). A cause of action is an interest in property. *Pitman Farms v. ARKK Food Co., LLC*, 78 F.4th 1006, 1008 (8th Cir. 2023).

The question raised here – and by its nature fact-specific – is what opportunity is appropriate for the nature of the case. Here, the settlements threaten to extinguish causes of action across the country worth billions of dollars. The opportunity presented was a "hearing" at which no evidence was taken. It was a process in which the objectors were not permitted to access essential financial information to judge the financial situation of the settling defendants (an important point to the trial court and to the Eighth Circuit – see App. 3434; R. Doc. 1622, ¶¶ 19, 29; *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005), or examine the sole witness providing testimony as to that financial situation. That witness also happened to be the law partner of one of the class counsel.

When the hearing that Rule 23(e)(2) requires finally came along, objectors had no opportunity to present evidence. They were given a mere five minutes to speak. The hearing, with billions of dollars of money that rightfully belonged to homesellers across the nation in the balance, lasted one hour. The lengthy order

23

that supposedly took the arguments at that hearing into account was posted to PACER before lunch was over.

Whatever an appropriate hearing is for a sui generis case like this is, this cannot be it.

     e. *The trial court wrongfully and without explanation pulled the rug out from under objectors by imposing a last minute onerous requirement that each appear in person*

The First Circuit has observed:

> Because parties to a settlement have a shared incentive to impose burdensome requirements on objectors and smooth the way to approval of the settlement, district courts should be wary of possible efforts by settling parties to chill objections. By monitoring class counsel and providing courts with crucial information on which to evaluate proposed settlements, meritorious objectors can be of immense help to a district court in evaluating the fairness of a settlement.

*Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 fn. 3 (1st Cir. 2015). What does not appear to have occurred to the First Circuit is what happens when the trial court itself shares an incentive to impose burdensome requirements on objectors.

That appears to be what has occurred here. The trial court, with three dozen objectors across the country, decided for reasons only it knows to demand that each and every one appear in Kansas City, Missouri two days before one of the country's most important civic holidays or face waiver of their objections. And it

carried through on its threat, deeming the objections of every objector who was unable to attend in person waived.

If, as the First Circuit warned, district courts must be on alert to possible schemes by parties to chill objections, then it necessarily falls on the circuit courts to be on watch for schemes by district courts to chill objections. This Court should send a message here: the district courts have broad discretion, but that discretion does not extend to a license to promise class members they may object to a settlement that leaves them with peanuts, that they need not attend the hearing to be heard, then suddenly demand their presence or they will lose their voice in the process – a process in which, in this case, many have an interest to the tune of thousands of dollars.

If for no other reason, this inexplicable attack on objectors and the disrespect it shows for their vital role in the process of class action settlement alone is sufficient to require reversal.

25

## CONCLUSION

Federal Rule of Civil Procedure 23(e) serves an important purpose. Because the people who are served by the form of the class action do not, by the nature of the form, have the power an ordinary client has to ensure that their interests are protected, that the results they receive are fair, and that the considerations around settlement are fully weighed, the Rule gives the federal courts the responsibility to do so. Here, the trial court did not succeed. Indeed, the trial court instead chose to become a prime participant in ensuring that those who raise objections were subject to onerous last-minute requirements. Appellants ask that this Court reverse and remand this matter to ensure that the interests of homesellers across the nation are protected.

Date: April 21, 2024

Respectfully Submitted,

*/s/D. McArdle Booker*
Bruce C. Fox
bruce.fox@obermayer.com
Andrew J. Horowitz
andrew.horowitz@obermayer.com
McArdle Booker
mcardle.booker@obermayer.com
Obermayer Rebmann Maxwell & Hippel LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
Tel: (412) 566-1500

Bert S. Braud, Esquire
MO ID No.: 34325

26

bbraud@pophamlaw.com
THE POPHAM LAW FIRM
712 Broadway, Suite 100
Kansas City, MO 64105
(816) 221-2288

*Attorneys for Objectors-Appellants*
*Spring Way Center LLC*
*Nancy Wehrheim*
*John Moratis*
*Nancy Moratis*
*Danielle Kay*
*Jessie Kay*
*Kaitlyn Slavic*
*Maria Iannome*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2024 I electronically refiled the foregoing with the Clerk of the Eighth Circuit by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ D. McArdle Booker
Attorney for Objector-Appellant Spring
Way Center, LLC

28

## COMBINED CERTIFICATE OF COMPLANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a). The non-exempt portion of this brief contains 4,004 words. This brief has been prepared in 14-point Times New Roman font.

This brief has been filed electronically in non-scanned PDF format. The file has been scanned for viruses and is virus-free.

*/s/ D. McArdle Booker*
Attorney for Objector-Appellant Spring
Way Center LLC

Appellate Case: 24-3444    Page: 37    Date Filed: 04/28/2025 Entry ID: 5510838